F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 13 2026 ★

LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MAY 13 2026

**CV 26 2861**

MARK W. JENKINS,

Plaintiff,

-against-

COPIAGUE UNION FREE SCHOOL DISTRICT;
TODD J. ANDREWS, in his individual and
official capacities; and ANGELO LISA, in
his individual and official capacities,

Defendants.

Civil Action No. _____

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

**CHOUDHURY, J.**

**WICKS, M.J.**

Plaintiff Mark W. Jenkins, proceeding pro se, by way of this Verified Complaint against Defendants Copiague Union Free School District, Todd J. Andrews, and Angelo Lisa, alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for race and national-origin discrimination, retaliation, hostile work environment, and unequal pay brought by Plaintiff Mark W. Jenkins, a Black man of Jamaican national origin, against the Copiague Union Free School District (the "District"), Todd J. Andrews, the District's Assistant Superintendent for Human Resources, and Angelo Lisa, the District's Director of Facilities. The events giving rise to this action occurred primarily at the District's administration building, 2650 Great Neck Road, Copiague, Suffolk County, New York.

2. Plaintiff was hired as Head Custodian at the District's Walter G. O'Connell Copiague High School on February 27, 2019. Over the next three and a half years, he served the District ably, including approximately six (6) months as Interim High School Chief Custodian without additional compensation. On the basis of his fitness, his merit, and the personal observation of the District's Superintendent, Dr. Kathleen Bannon, and the High School Principal, Mr. Joseph Agosta, Plaintiff was recommended for promotion to High School

Chief Custodian. On September 19, 2022, the Board of Education adopted a motion approving that promotion.

3. Two days later, on September 21, 2022, Defendant Andrews summoned Plaintiff to his office and rescinded the promotion. As Andrews has since admitted under oath, the reason was that Plaintiff had requested a meeting to discuss the proposed promotional salary as differential treatment, which Andrews characterized as "aggressive" and "hostile." In Andrews' own admitted and recorded words: "You sent me emails, one more aggressive and hostile than the next, and you emailed yourself out of a job."

4. Following the rescission, the District bypassed Plaintiff for four (4) subsequent Chief Custodian appointments, each time selecting a less-experienced white candidate at a substantially higher salary, and — with respect to the 2025 appointments — in direct violation of Suffolk County Department of Civil Service certifications that listed Plaintiff as the only eligible District candidate and bore the bold-faced legend "THIS LIST HAS PREFERENCE AND MUST BE USED FIRST."

5. Defendants' conduct toward Plaintiff is not isolated. On information and belief, the District has bypassed Black Custodian John Abrams for promotion from part-time to full-time custodian for at least five (5) years, requiring a grievance to force the appointment, and continues to deny Mr. Abrams collective-bargaining transfer rights to less labor-intensive locations that are routinely granted to younger, less-senior white employees. On information and belief, Defendant Lisa has categorically excluded Hispanic applicants from custodial hiring on the stated ground that they "do not speak English," and has excluded female applicants on the stated ground that they are not "up to the physical demands of the job."

6. Plaintiff seeks compensatory and punitive damages; equitable relief, including a retroactive promotion to Chief Custodian with full back pay and seniority; a permanent injunction against further retaliation; attorneys' fees and costs; and such other relief as the Court deems just and proper.

**JURISDICTION AND VENUE**

7. This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4); 42 U.S.C. § 2000e-5(f)(3); and 42 U.S.C. §§ 1981, 1983, and 1988.

8. This Court has supplemental jurisdiction over Plaintiff's claims arising under the New York State Human Rights Law, N.Y. Executive Law § 290 et seq., pursuant to 28 U.S.C. § 1367(a), because those claims arise from the same case or controversy as the federal claims.

9. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(1)–(2) and 42 U.S.C. § 2000e-5(f)(3) because (a) all Defendants reside in Suffolk County, New York, which lies within this District; (b) a substantial part of the events giving rise to the claims occurred in Suffolk County; and (c) the unlawful employment practices were committed within this District.

10. Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC Charge No. 520-2025-08002) on November 27, 2025, dual-filed with the New York State Division of Human Rights, alleging discrimination on the basis of race and national origin and retaliation.

11. On March 6, 2026, the EEOC issued a Determination and Notice of Rights. Plaintiff received the Notice on March 6, 2026 through the EEOC Public Portal. This action is timely commenced within ninety (90) days of receipt.

12. All conditions precedent to suit have been satisfied or waived. No notice of claim is required under New York Education Law § 3813 for the discrimination, retaliation, hostile-work-environment, or civil-rights claims pleaded here. See Margerum v. City of Buffalo, 24 N.Y.3d 721 (2015); Felder v. Casey, 487 U.S. 131 (1988).

**PARTIES**

13. Plaintiff Mark W. Jenkins is, and at all relevant times has been, a citizen of the United States, a resident of Suffolk County, New York, and an employee of the Copiague Union Free School District. Plaintiff is a Black man of Jamaican national origin and was born in

1977. Plaintiff resides at 86 Jamaica Avenue, Wyandanch, New York 11798; telephone (631) 805-3313; email markwjenkins9@gmail.com.

14. Defendant Copiague Union Free School District is a public school district organized and existing under the laws of the State of New York, with its principal place of business at 2650 Great Neck Road, Copiague, Suffolk County, New York 11726; telephone (631) 842-4015. The District is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), and the New York State Human Rights Law, N.Y. Exec. Law § 292(5). At all relevant times, the District has employed between approximately seven hundred eighty (780) and eight hundred (800) employees.

15. The District is a "person" acting under color of state law within the meaning of 42 U.S.C. § 1983.

16. Defendant Todd J. Andrews is, and at all relevant times has been, the Assistant Superintendent for Human Resources of the Copiague Union Free School District. His business address is c/o Copiague Union Free School District, 2650 Great Neck Road, Copiague, New York 11726; telephone (631) 842-4015 x 500. In that role, Andrews is the senior official responsible for personnel and human-resources matters within the District, including the recommendation, screening, and approval of promotions; salary placement; the conduct of internal investigations; the response to grievances; and the District's communications with the Suffolk County Department of Civil Service. Andrews is sued in his individual and official capacities.

17. Defendant Andrews exercises final, unreviewable authority within the District over the personnel decisions and promotional screening at issue in this Complaint. On September 21, 2022, in a meeting recorded by Andrews himself, Andrews told Plaintiff: "I am an arbiter of what is professional."

18. Defendant Angelo Lisa is, and at all relevant times has been, the Director of Facilities of the Copiague Union Free School District, with supervisory authority over the District's Buildings and Grounds department, including the custodial and maintenance staff. His business address is c/o Copiague Union Free School District, 2650 Great Neck Road,

Copiague, New York 11726; telephone (631) 842-4015 x 550. Lisa was at all relevant times Plaintiff's department head. Lisa is sued in his individual and official capacities.

19. At all relevant times, Andrews and Lisa were acting under color of state law and within the scope of their employment with the District. Their actions complained of herein were ratified, condoned, and adopted by the District.

20. Both Andrews and Lisa are white. On information and belief, at all relevant times, eighty five percent (85%) of the District's Board of Education members, one hundred percent (100%) of its district-level administrators, and one hundred percent (100%) of Plaintiff's custodial-supervisor counterparts were white.

21. Dr. Kathleen Bannon is, and currently is, the Superintendent of Schools of the District. Dr. Bannon personally observed Plaintiff's work and originated the recommendation that Plaintiff be promoted to High School Chief Custodian.

22. Mr. Joseph Agosta is, and at all relevant times has been, the Principal of Walter G. O'Connell Copiague High School. Mr. Agosta personally observed Plaintiff's work and joined Dr. Bannon in recommending Plaintiff for promotion to High School Chief Custodian.

## ADMINISTRATIVE EXHAUSTION

23. Plaintiff timely filed a Charge of Discrimination with the EEOC on November 27, 2025, alleging discrimination on the basis of race and national origin and retaliation. The Charge was dual-filed with the New York State Division of Human Rights pursuant to the EEOC's standard work-sharing agreement.

24. The EEOC investigated the Charge for approximately three months. On January 29, 2026, the District submitted a Position Statement supported by sworn Affirmations of Defendants Andrews and Lisa, each affirmed January 27, 2026. On February 28, 2026, Plaintiff submitted a written Rebuttal supported by exhibits.

25. The New York State Division of Human Rights took no independent action on the Charge and made no merits determination. No NYSDHR finding has issued. Accordingly, no

election-of-remedies bar arises under N.Y. Executive Law § 297(9). See York v. Association of the Bar of the City of New York, 286 F.3d 122 (2d Cir. 2002).

26. On March 6, 2026, the EEOC issued a Determination and Notice of Rights, dismissing the Charge without making a merits determination and notifying Plaintiff of his right to sue. The Notice expressly states: "This does not mean the claims have no merit." Plaintiff received the Notice on March 6, 2026 through the EEOC Public Portal.

27. This action is filed within ninety (90) days of receipt of the Notice of Right to Sue. All allegations within the EEOC Charge, and those reasonably related to it, are timely. Allegations of unlawful conduct pre-dating the EEOC charging period are pleaded as background evidence in support of the timely claims and as part of an ongoing pattern of discrimination, retaliation, and hostile work environment. See National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

28. The factual allegations of this Complaint fall within the scope of the EEOC's actual investigation, are reasonably related to the conduct charged, and arise from the same operative facts as the rescinded September 19, 2022 promotion, the bypass of subsequent Chief Custodian appointments, the racially demeaning statements of Defendants Andrews and Lisa, and the disparate salary treatment that Plaintiff identified in his EEOC Charge. The Affirmations submitted by Defendants Andrews and Lisa to the EEOC on January 27, 2026 directly addressed the September 19, 2022 protected-activity emails and the September 21, 2022 meeting, placing those facts squarely within the matters the EEOC investigated. To the extent any allegation herein was not literally stated within the four corners of the EEOC Charge, it is reasonably related to the charged conduct and is therefore exhausted. See Williams v. New York City Housing Authority, 458 F.3d 67 (2d Cir. 2006); Deravin v. Kerik, 335 F.3d 195 (2d Cir. 2003); Butts v. City of New York Department of Housing Preservation and Development, 990 F.2d 1397 (2d Cir. 1993).

## FACTUAL ALLEGATIONS

### A. Plaintiff's Background and Qualifications

29. Plaintiff was born in Jamaica in 1977 and is a Black man of Jamaican national origin. He is a naturalized citizen of the United States and resides in Suffolk County, New York.

30. Prior to his employment with the District, Plaintiff acquired extensive experience in custodial and facilities supervision, including approximately fifteen (15) years of progressive responsibility in the Maintenance Department of the New York State Office for People With Developmental Disabilities (OMRDD/LIDDSO). Plaintiff obtained the Suffolk County Department of Civil Service certifications required for the positions of Head Custodian and Chief Custodian, including a 80% passing score on the Chief Custodian civil-service Promotional and Open-Competitive exams at all relevant times. None of the candidates hired appear on the Promotional List.

### B. Plaintiff's Hire and Performance

31. On or about February 27, 2019, the District hired Plaintiff as Head Custodian at Walter G. O'Connell Copiague High School (the "High School"), his appointment having been made from a Suffolk County Civil Service eligibility list.

32. Throughout his employment, Plaintiff has performed his duties professionally and competently, has received favorable performance evaluations, and has not been the subject of any formal disciplinary action.

33. In or about June 2025, Plaintiff received a positive performance evaluation from his then-immediate supervisor, Middle School Chief Custodian Timothy McCarthy. On information and belief, shortly thereafter, Defendant Lisa criticized Mr. McCarthy for having issued a positive evaluation of Plaintiff.

34. In or about 2022, Plaintiff served as Interim High School Chief Custodian for approximately six (6) months following the retirement of the prior High School Chief Custodian, Mr. Jeffrey Engelhardt. During that period, Plaintiff performed the duties of High School Chief Custodian without additional compensation, salary adjustment, or formal Civil Service designation.

### C. The November 2021 Vacancy

35. On or about November 4, 2021, the District posted a vacancy for a Chief Custodian position but left the position unfilled.

### D. The September 19, 2022 Board-Approved Promotion

36. In or about July 2022, the Suffolk County Department of Civil Service established a certified preferred promotional eligibility list for the title of Chief Custodian, designated List No. 21-8007-148 PR (the "2022 Promotional List").

37. Plaintiff was the only employee of the District whose name appeared on the 2022 Promotional List.

38. Under Suffolk County Civil Service Rule 12(c) and longstanding past practice, certified preferred promotional lists must be exhausted before an open-competitive list may be used to fill a vacant promotional position. The certifications issued by Suffolk County Civil Service expressly bear the bold-faced legend: "THIS LIST HAS PREFERENCE AND MUST BE USED FIRST." Article 5 of Plaintiff's Collective Bargaining Agreement likewise provides that bargaining-unit employees "shall be given first consideration for vacancies" for which they are qualified.

39. On the morning of September 19, 2022, Plaintiff first learned, through co-worker Thomas McCay, that Plaintiff's name would appear on the agenda of the Board of Education meeting scheduled for that evening for promotion to High School Chief Custodian. The District had not previously notified Plaintiff that he was being presented to the Board for promotion that day.

40. On the same date, Plaintiff also learned that the District had set a proposed starting Chief Custodian salary for him of approximately $78,201 — a salary increase of only $2,343, or 2.99%, over his then-current Head Custodian salary, equivalent to a movement of only one (1) salary step on the applicable Collective Bargaining Agreement schedule.

41. By comparison, the District had publicly posted, in the months preceding September 2022, a substantially higher starting salary of approximately $86,851 for the position of Elementary School Chief Custodian, even though, under the applicable salary schedule, the High School Chief Custodian position had historically commanded a higher salary than the Elementary Chief Custodian position based on workload.

42. At the Board of Education meeting held the evening of September 19, 2022, the Board adopted a Motion to Approve Plaintiff's promotion to High School Chief Custodian (Board

Item 2.16). The Board minutes printed the following morning, September 20, 2022, at 8:13 a.m., reflect that the motion passed.

### *E. Plaintiff's Protected Activity on September 19, 2022*

43. Earlier on September 19, 2022, prior to the Board of Education meeting, Plaintiff met in person with Defendant Lisa, his department head. Plaintiff verbally complained to Defendant Lisa that the proposed promotional salary constituted "differential treatment" when compared with the substantially higher salary the District had publicly posted for the comparable Elementary Chief Custodian position. Plaintiff requested a meeting with Defendant Andrews to address the salary differential.

44. On information and belief, in response to Plaintiff's verbal complaint, and acting at the direction of or in coordination with Defendant Andrews, Defendant Lisa communicated to Plaintiff that the salary was "take it or leave it," and that Defendant Andrews had no intention of meeting with Plaintiff before the Board meeting that evening.

45. Following Defendant Lisa's "take it or leave it" response, Plaintiff sent a series of emails to Defendant Andrews on September 19, 2022, repeating his complaint of differential salary treatment and requesting a meeting with Defendant Andrews to resolve it. Plaintiff's emails reiterated his comparison between the salary offered to him (a Black, Jamaican-American candidate) and the substantially higher salary the District had recently posted for the comparable Elementary Chief Custodian position.

46. Plaintiff's verbal complaint of "differential treatment" to Defendant Lisa on the morning of September 19, 2022, and his follow-up emails to Defendant Andrews the same day, together constituted statutorily protected opposition activity. Plaintiff held an objectively reasonable, good-faith belief that the salary disparity constituted unlawful discrimination on the basis of race and national origin. Defendant Andrews' own contemporaneous response — characterizing Plaintiff's complaints as "aggressive" and "hostile" and stating, on information and belief, "you people are aggressive" — confirms that Andrews understood Plaintiff's complaint as opposing what Plaintiff in good faith believed to be unlawful race- and national-origin-based discrimination. See Crawford v. Metropolitan

Government of Nashville, 555 U.S. 271 (2009); Galdieri-Ambrosini v. National Realty & Development Corp., 136 F.3d 276 (2d Cir. 1998).

47. Defendant Andrews replied through his administrative assistant, Ms. Maura Muroff, that he could not meet with Plaintiff that day, and that an appointment would be scheduled the following week. Plaintiff sent a follow-up email on September 21, 2022 requesting that the meeting be set.

*F. The September 21, 2022 Meeting and Rescission of the Promotion*

48. Defendant Andrews scheduled an in-person meeting with Plaintiff for September 21, 2022, at 11:30 a.m. The stated purpose of the meeting, as conveyed in Defendant Andrews' own scheduling email, was "to discuss the circumstances surrounding the BOE tabling the recommendation for appointment to the HS Chief Custodial position."

49. No formal Board action to "table" Plaintiff's promotion was lawfully taken at the September 19, 2022 Board meeting. The Board had voted to approve the promotion.

50. On September 21, 2022, Plaintiff met with Defendant Andrews in his office. Defendant Andrews recorded the meeting on a hand-held device. Defendant Andrews has admitted, under oath in his sworn Affirmation submitted to the EEOC dated January 27, 2026 (at paragraphs 29 and 32), that he made the following statements to Plaintiff during that meeting:

51. (a) "I will tell you that had you approached this professionally and appropriately, we would have had a whole different conversation. At this point, there is not really a conversation for us to have";

52. (b) "You sent me emails, one more aggressive and hostile than the next, and you emailed yourself out of a job"; and

53. (c) "I am an arbiter of what is professional."

54. Plaintiff personally recalls that, during the same meeting, Defendant Andrews also stated, in substance, "You people are aggressive," in reference to Black people and/or Black Jamaican-Americans — an old racist trope long used to dehumanize Black people. The

audio recording made by Defendant Andrews and in his possession will confirm Plaintiff's recollection of those words.

55. By the close of the September 21, 2022 meeting, Defendant Andrews had revoked the promotion that the Board of Education had approved two days earlier.

56. Defendant Andrews has admitted under oath, in paragraph 29 of his EEOC Affirmation, that his "intention for the meeting was to explain to Mr. Jenkins that I would not be recommending him for promotion at this time because I felt that the multiple emails he sent me on September 19th were unprofessional." Defendant Andrews has thus expressly admitted that the cause of his decision to revoke the promotion was the content and tone of Plaintiff's September 19, 2022 emails — the very emails in which Plaintiff opposed differential salary treatment.

57. Plaintiff did not decline or "turn down" the promotion at any time. The District's contemporaneous representations and Defendant Andrews' own sworn statements at paragraphs 29 and 32 of his Affirmation — stating that Andrews met with Plaintiff on September 21, 2022 "to explain" that Andrews "would not be recommending him for promotion at this time" — confirm that the rescission was effected unilaterally by Defendant Andrews.

58. Less than forty-eight (48) hours elapsed between Plaintiff's September 19, 2022 protected activity and Defendant Andrews' September 21, 2022 rescission of the promotion.

59. Defendant Andrews did not contend that Plaintiff's September 19, 2022 emails violated any written policy of the District. He imposed no progressive discipline. He did not refer Plaintiff to counseling. He did not issue a written warning. He did not invoke any disciplinary procedure under N.Y. Civil Service Law § 75 or any provision of the Collective Bargaining Agreement. His sole and immediate response to Plaintiff's salary-related protected activity was to revoke the promotion.

### G. Alteration of the Public Board Minutes

60. The Board of Education minutes of the September 19, 2022 meeting, in their original printed form (printed at 8:13 a.m. on September 20, 2022), reflect that Plaintiff's promotion was approved by motion (Board Item 2.16).

61. On information and belief, on or about September 24, 2022 — three days after Defendant Andrews revoked Plaintiff's promotion — the Board minutes were re-printed in altered form to reflect that Plaintiff's promotion had been "tabled" under a different action-item designation (Board Item 2.18).

62. No further Board meeting or motion to reconsider, table, or amend the September 19, 2022 vote took place between September 19, 2022 and September 24, 2022. The alteration of the public Board minutes after the rescission of Plaintiff's promotion was not the product of regular Board action and constitutes circumstantial evidence of pretext, retaliatory motive, and a coordinated effort to construct a post-hoc justification for the discriminatory and retaliatory rescission.

### H. The First Comparator — Thomas McCay

63. On or about November 21, 2022, the District promoted Thomas McCay, who is white, to the position of Elementary School Chief Custodian (Board Item 2.16).

64. On information and belief, Mr. McCay's pre-promotion Head Custodian salary was approximately $86,462, and his post-promotion Chief Custodian salary was approximately $93,499 — a salary increase of approximately $8,046, or 8.61%, equivalent to a movement of three (3) salary steps.

65. By contrast, the salary increase the District offered Plaintiff just two months earlier was only $2,343, or 2.99%, equivalent to one (1) salary step.

66. Both promotions were governed by the same Collective Bargaining Agreement and the same salary schedule. There is no facially neutral reason for the gross disparity in salary increases offered to a Black, Jamaican-American candidate (Plaintiff) and to a white candidate (McCay) for materially equivalent Chief Custodian positions, separated by only two months, both made under the authority of Defendant Andrews.

### I. Plaintiff's Three Sequential Grievances Alleging Differential Treatment

67. On a date prior to November 29, 2022, Plaintiff initiated an informal first-step grievance by meeting in person with Defendant Lisa, his department head. In that meeting, Plaintiff expressly complained of "differential treatment" in the rescission of his September 19, 2022 promotion and in the salary placement offered to him as compared with white comparators. Defendant Lisa took no action and provided no remedy.

68. On November 29, 2022, Plaintiff filed a written grievance with Defendant Andrews under Article 26 of the Collective Bargaining Agreement, expressly alleging "differential treatment" in the rescission of Plaintiff's promotion and salary placement. Plaintiff sent a copy of the grievance to Mr. Timothy McCarthy, the union representative.

69. Defendant Andrews summarily denied the November 29, 2022 grievance without convening a hearing, conducting any investigation, or referring the matter for impartial review.

70. On December 8, 2022, Plaintiff escalated the grievance by submitting a written grievance to Superintendent Dr. Kathleen Bannon, again expressly alleging "differential treatment." On information and belief, Dr. Bannon took no investigative or remedial action in response.

71. Each of Plaintiff's three sequential grievances — the informal in-person grievance to Defendant Lisa prior to November 29, 2022; the written grievance to Defendant Andrews on November 29, 2022; and the written grievance to Superintendent Bannon on December 8, 2022 — expressly used the term "differential treatment" to characterize the racially disparate treatment Plaintiff was protesting. Each constituted statutorily protected opposition activity under Title VII, 42 U.S.C. §§ 1981 and 1983, and N.Y. Exec. Law § 296(7). The summary denial of each grievance, without investigation or remedial action, was not the product of any neutral or objective process and forms part of the continuing pattern of retaliation.

### J. Workers' Compensation Leave and the External Hire of Eric Huebsch

72. On or about November 28, 2022, Plaintiff was placed on Workers' Compensation leave, which continued until on or about October 30, 2023.

73. While Plaintiff was on Workers' Compensation leave, the District filled a Chief Custodian vacancy by hiring Mr. Eric Huebsch, who is white, as an external hire on or about December 19, 2022. Mr. Huebsch was not a District employee and did not appear on the 2022 Promotional List. At the time of Mr. Huebsch's external hire, Plaintiff remained the only District-employed candidate on the certified preferred promotional list, and the legend "THIS LIST HAS PREFERENCE AND MUST BE USED FIRST" continued to apply. The District's decision to bypass the certified preferred list in favor of an external white hire violated the express directive of the Suffolk County Department of Civil Service.

### K. The Transfer to Middle School and Continuing Adverse Treatment

74. Upon Plaintiff's return from Workers' Compensation leave on October 30, 2023, the District transferred Plaintiff from the High School to the Middle School Head Custodian position.

75. On information and belief, the transfer was effected at the direction of Defendants Andrews and Lisa and was retaliatory in motive. The transfer (a) eliminated overtime opportunities historically associated with the busier High School; (b) placed Plaintiff under heightened scrutiny in a building housing District administrators; (c) increased Plaintiff's workload by requiring him to perform technical repair work that was customarily performed by the Maintenance department; and (d) deprived Plaintiff of permanent and substitute custodial staffing, while the High School and other schools continued to receive maximum staffing.

76. Following the transfer, Defendant Lisa stated to Plaintiff, in substance, "I'm glad it's working out since I thought it wouldn't," in reference to Plaintiff's continued ability to perform the role despite the conditions imposed.

77. On information and belief, based on accounts received from former District Maintenance employee Errol Berenzy and others, Defendant Lisa has stated, in the presence of others, "I can train a monkey to do custodial work." Plaintiff alleges this statement was made in reference to, or with the intended effect of demeaning, Plaintiff and other Black custodians, and that the racial connotation of comparing Black men to monkeys would have been understood by any listener.

78. On information and belief, Defendant Lisa has stated, in the presence of others, in substance, "I don't want guys like Mark around," in reference to Plaintiff.

79. Following the transfer, Defendant Lisa excluded Plaintiff from offsite custodial training workshops in which Plaintiff had participated prior to engaging in protected activity, and excluded Plaintiff from interviewing new hires — a process Plaintiff had previously been involved in.

80. Following the transfer, Plaintiff was excluded from supervisory meetings and important departmental communications. At an all-staff meeting of Buildings and Grounds personnel held in or about August 2025, Defendant Lisa praised every other custodial supervisor by name for their work preparing schools for the academic year, while conspicuously omitting Plaintiff.

### L. The Caggiano Comparator — Off-CBA Salary Increase

81. On or about November 25, 2024, the District granted a two-step salary increase to Maintenance Mechanic I Mr. Michael Caggiano, who is white, on the asserted basis of a meeting Mr. Caggiano initiated by walking unannounced into Defendant Andrews' office.

82. On information and belief, the increase to Mr. Caggiano was not accompanied by any promotion, by any change to the applicable Collective Bargaining Agreement salary schedule, or by any ratified Memorandum of Agreement modifying salary placement.

83. Defendants' stated justification for the rescission of Plaintiff's 2022 promotion — that the proposed promotional salary was non-negotiable and strictly governed by the Collective Bargaining Agreement — is directly contradicted by the District's own discretionary, off-CBA salary treatment of Mr. Caggiano, a white employee.

### M. Continuing Bypasses for Promotion in 2025

84. In or about July 2024, the Suffolk County Department of Civil Service established a new certified preferred promotional eligibility list for the title of Chief Custodian, designated List No. 24-8007-083 PR (the "2024 Promotional List"). Plaintiff was again the only District employee whose name appeared on the 2024 Promotional List.

85. On February 6, 2025, the Suffolk County Department of Civil Service issued a Certification of Eligibles addressed to Defendant Andrews listing Plaintiff as the only candidate eligible for promotion from the District to the Chief Custodian position. The certification bore the bold-faced legend: "THIS LIST HAS PREFERENCE AND MUST BE USED FIRST." Defendant Andrews signed and returned the certification.

86. On February 14, 2025, Plaintiff applied by email to Defendant Andrews for the Chief Custodian position. Defendant Andrews did not respond and did not act on the application.

87. On April 7, 2025, the District filled a Chief Custodian vacancy by appointing Mr. Zachary Stewart, who is white. On information and belief, Mr. Stewart scored 85 on the open-competitive Chief Custodian civil-service examination and did not appear on the 2024 Promotional List.

88. On June 16, 2025, the Suffolk County Department of Civil Service issued a second Certification of Eligibles addressed to Defendant Andrews, again listing Plaintiff as the only District-employed candidate eligible for promotion from the 2024 Promotional List, and bearing the same bold-faced legend that the list "HAS PREFERENCE AND MUST BE USED FIRST." Defendant Andrews signed and returned that certification as well.

89. On August 11, 2025, the District filled a Chief Custodian vacancy at the Middle School by appointing Mr. Michael Valvano, who is white. On information and belief, Mr. Valvano had been employed by the District as a Head Custodian for only approximately six (6) months at the time of his promotion; had no prior supervisory experience; and scored 85 on the open-competitive Chief Custodian civil-service examination.

90. On information and belief, Defendant Andrews submitted an application to the Suffolk County Department of Civil Service for special dispensation to appoint Mr. Valvano as Middle School Chief Custodian on or about August 11, 2025, even though the incumbent Middle School Chief Custodian, Mr. Timothy McCarthy, would not retire until on or about August 29, 2025.

91.    Mr. Valvano was promoted to the Middle School Chief Custodian position that supervises Plaintiff, with the result that Plaintiff has been required to train his own newly promoted supervisor.

92.    On information and belief, Mr. Valvano received an immediate Chief Custodian salary in excess of $85,927, representing a salary increase of approximately 15.61% over his prior Head Custodian salary, equivalent to a movement of seven (7) salary steps. By contrast, the salary increase the District offered Plaintiff in 2022 was only 2.99%, equivalent to one (1) salary step.

93.    Plaintiff was the only employee of the District on the certified preferred promotional list at all relevant times in 2025.

### N. Side-by-Side Comparator Summary

94.    The following table summarizes the side-by-side promotional and salary treatment of Plaintiff (the only Black, Jamaican-American candidate) and the four (4) white comparators appointed by the District during the relevant period:

| Candidate | Race | Date | Salary Action | % Increase | Steps |
|---|---|---|---|---|---|
| Mark Jenkins | Black / Jamaican | 9/19/2022 (rescinded) | $2,343 (rescinded) | 2.99% | 1 |
| Thomas McCay | White | 11/21/2022 | $8,046 | 8.61% | 3 |
| Eric Huebsch | White | 12/19/2022 | External hire | n/a | n/a |
| Zachary Stewart | White | 4/7/2025 | External hire | n/a | n/a |
| Michael Valvano | White | 8/11/2025 | $13,415 | 15.61% | 7 |

### O. Third-Party Retaliation — Mark W. Jenkins, Jr.

95.    Plaintiff's son, Mark W. Jenkins, Jr., applied for a substitute custodian position with the District in or about the summer of 2022. Mr. Jenkins, Jr. submitted his application in person and the application was stamped and dated on submission.

96.    Mr. Jenkins, Jr. was interviewed for the position in or about September 2022 by, among others, Defendant Lisa, Groundsman II Charles Ragusa, and Maintenance Crew Chief

Jason Barone. He was informed by interviewers that he had performed well and would be hired.

97.   Following Plaintiff's September 19 and 21, 2022 protected activity, Mr. Jenkins, Jr. was not hired. The District has since represented to the EEOC that there is "no record" that Mr. Jenkins, Jr. ever applied for a substitute custodian position. That representation is false. The District's denial of Mr. Jenkins, Jr.'s candidacy was a third-party retaliatory adverse action against Plaintiff cognizable under Thompson v. North American Stainless, LP, 562 U.S. 170 (2011).

### P. Pattern and Practice of Race, National-Origin, and Sex Discrimination

98.   Defendants' conduct toward Plaintiff is part of a pattern and practice of race, national-origin, and sex discrimination by the District, and in particular by Defendants Lisa and Andrews.

99.   On information and belief, John Abrams, an experienced Black Custodian, was bypassed for promotion from part-time to full-time custodian for at least five (5) years, in favor of less-experienced employees outside the protected class. Mr. Abrams was finally promoted to full-time Custodian only after a grievance was brought.

100.  On information and belief, Defendant Lisa is currently barring Mr. Abrams from transferring out of the busy high school to a less labor-intensive location, such as an elementary school, despite Mr. Abrams' advanced years and his Collective Bargaining Agreement seniority rights, while younger, less-senior white custodial employees are permitted to transfer freely. The bar has been in place for many years and continues.

101.  On information and belief, Defendant Lisa has refused to hire Hispanic applicants for custodial positions on the asserted ground that they "do not speak English," notwithstanding that English fluency is not a required qualification for many custodial positions and notwithstanding the disparate impact of any such requirement on applicants of Hispanic national origin. The names and circumstances of specific applicants are within the District's exclusive control and will be developed in discovery.

102. On information and belief, Defendant Lisa has refused to hire female applicants for custodial positions on the asserted ground that they are not "up to the physical demands of the job," notwithstanding that the physical requirements of custodial positions are governed by formal job specifications applied to all applicants regardless of sex. The names and circumstances of specific applicants are within the District's exclusive control and will be developed in discovery.

103. On information and belief, no formal investigation, training, or remedial action was undertaken by the District in response to internal or informal complaints about Defendant Lisa's conduct, including but not limited to Plaintiff's three sequential grievances and the John Abrams transfer bar. The Board of Education and the Superintendent had actual or constructive knowledge of the patterns described above and acquiesced in or ratified them.

### Q. Continuing Harm and Damages

104. Plaintiff continues to be employed by the District as Middle School Head Custodian. Plaintiff has not been promoted, has not been awarded back pay, has not received the salary differential to which a Chief Custodian is entitled, and continues to work under conditions of professional isolation, exclusion, and antagonism that began in September 2022 and persist to the present day.

105. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer (a) substantial economic loss in the form of lost wages, lost overtime, lost differential between his Head Custodian salary and the Chief Custodian salary he would have received, and lost pension and benefit accruals; (b) injury to his professional reputation and career trajectory; (c) emotional distress, anxiety, sleep disturbance, humiliation, and damage to family relationships; and (d) other damages to be proved at trial.

106. Defendants' conduct was intentional, willful, malicious, and/or in reckless disregard of Plaintiff's federally protected rights. Plaintiff is entitled to punitive damages against Defendants Andrews and Lisa in their individual capacities under 42 U.S.C. §§ 1981 and 1983, and to the full panoply of compensatory damages and other relief permitted under Title VII and the New York State Human Rights Law.

## COUNT I

### Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964

*(42 U.S.C. § 2000e-2(a) — Against Defendant District)*

107. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

108. Plaintiff is a member of a protected class under Title VII because he is Black.

109. Plaintiff was qualified for the Chief Custodian position. He was certified eligible by the Suffolk County Department of Civil Service, was the only District-employed candidate on the certified preferred promotional list at the relevant times, and had been recommended for promotion by the Superintendent and the High School Principal based on their personal observation of his work and his work evaluations.

110. Plaintiff suffered adverse employment actions including: (a) the September 21, 2022 rescission of his Board-approved promotion to High School Chief Custodian; (b) the bypass of Plaintiff for the November 21, 2022, December 19, 2022, April 7, 2025, and August 11, 2025 Chief Custodian appointments; (c) salary disparity in the offered promotional salary as compared with white comparators; (d) the October 30, 2023 transfer to the Middle School with reduced overtime, increased workload, and decreased staffing; (e) the third-party adverse action of refusing to hire Plaintiff's qualified son, Mark W. Jenkins, Jr.; and (f) exclusion from training, supervisory meetings, hiring interviews, and other terms, conditions, and privileges of employment.

111. These adverse actions occurred under circumstances giving rise to an inference of race discrimination, including: (a) the side-by-side disparate salary treatment of Plaintiff and his white comparators McCay (+8.61% / 3 steps), Valvano (+15.61% / 7 steps), and Caggiano (off-CBA discretionary raise without promotion); (b) the District's repeated departure from its own Civil Service compliance practice of using the certified preferred promotional list before the open-competitive list; (c) the racial composition of the District's administration (100% white) and Plaintiff's custodial-supervisor counterparts (100% white); (d) the pattern-and-practice evidence concerning John Abrams, Hispanic applicants, and female applicants; and (e) the racially demeaning statements made by

Defendant Lisa, including "I can train a monkey to do custodial work" and "I don't want guys like Mark around."

112. The District's stated non-discriminatory reasons for the adverse actions are pretextual. The District has admitted, through Defendant Andrews' sworn Affirmation, that the rescission of Plaintiff's promotion was caused by Plaintiff's salary-discussion emails, which Andrews labeled "aggressive" — a label the District has not applied to white employees engaging in similar or more aggressive salary advocacy (e.g., Mr. Caggiano).

113. As a direct and proximate result of the District's discrimination, Plaintiff has suffered and continues to suffer damages as set forth above and is entitled to all relief available under Title VII, including back pay, front pay, compensatory damages, equitable relief, attorneys' fees and costs, and such other relief as is just and proper.

## COUNT II

### National-Origin Discrimination in Violation of Title VII

*(42 U.S.C. § 2000e-2(a) — Against Defendant District)*

114. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

115. Plaintiff is a member of a protected class under Title VII because he is of Jamaican national origin.

116. The discriminatory conduct described above, including the September 21, 2022 "you people are aggressive" statement attributed to Defendant Andrews, was motivated, in whole or in substantial part, by Plaintiff's Jamaican national origin in addition to his race.

117. The District's pattern of refusing to hire Hispanic applicants on the ground that they "do not speak English" is further evidence of an unlawful national-origin discriminatory policy or practice within the District's custodial workforce, condoned by senior District officials.

118. Plaintiff suffered the same adverse employment actions on the basis of national origin as on the basis of race, and is entitled to the same relief.

## COUNT III

## Retaliation in Violation of Title VII

*(42 U.S.C. § 2000e-3(a) — Against Defendant District)*

119. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

120. On September 19, 2022, Plaintiff engaged in protected opposition activity by verbally complaining to Defendant Lisa, and by emailing Defendant Andrews, that the proposed promotional salary constituted "differential treatment" as compared with the higher salary the District had recently posted for the comparable Elementary Chief Custodian position. Plaintiff further engaged in protected activity by filing three sequential grievances expressly alleging "differential treatment" (to Defendant Lisa prior to November 29, 2022; to Defendant Andrews on November 29, 2022; and to Superintendent Bannon on December 8, 2022), and by filing the November 27, 2025 EEOC Charge.

121. Defendants knew of Plaintiff's protected activity. Defendant Andrews has admitted, under oath, that he revoked Plaintiff's promotion because of the September 19, 2022 emails.

122. Plaintiff suffered materially adverse actions — actions that would dissuade a reasonable worker from making or supporting a charge of discrimination — including the rescission of the September 19, 2022 promotion within forty-eight (48) hours of his protected activity; the bypass of four (4) subsequent Chief Custodian appointments; the October 30, 2023 transfer to the Middle School; the reduction in overtime; the failure to hire his son; the exclusion from training, supervisory meetings, and hiring interviews; and public ridicule by Defendant Lisa. See Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53 (2006); Muldrow v. City of St. Louis, 601 U.S. ___, 144 S. Ct. 967 (2024).

123. There is a direct causal connection between Plaintiff's protected activity and the adverse actions, established by (a) Defendant Andrews' admitted statement that Plaintiff "emailed [him]self out of a job"; (b) extreme temporal proximity between protected activity and adverse action (less than 48 hours between the September 19, 2022 protected activity and the September 21, 2022 rescission); and (c) the unbroken pattern of antagonism extending from September 2022 to the present, without any legitimate intervening cause that severs causation. See Kwan v. Andalex Group LLC, 737 F.3d 834 (2d Cir. 2013).

124. But for Plaintiff's protected activity, Plaintiff would have been promoted, would have received the salary increase to which he was entitled, and would not have been subjected to the adverse actions described above.

## COUNT IV

### Hostile Work Environment in Violation of Title VII

*(42 U.S.C. § 2000e-2(a) — Against Defendant District)*

125. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

126. Defendants' conduct, taken as a whole and considered cumulatively, created a hostile work environment for Plaintiff on the basis of his race and national origin. The conduct includes the September 21, 2022 "you people are aggressive" statement; Defendant Lisa's racially demeaning statements ("I can train a monkey to do custodial work"; "I don't want guys like Mark around"); the public exclusion of Plaintiff from praise during all-staff meetings; the persistent denial of staffing and equipment; the surveillance and increased scrutiny following the transfer; and the exclusion from supervisory meetings, training, and hiring interviews.

127. The hostile environment was severe or pervasive, was imputable to the District because senior District officials (Defendants Andrews and Lisa) themselves perpetrated and condoned the conduct, and altered the terms and conditions of Plaintiff's employment. Plaintiff suffered cognizable injury including emotional distress and sleep disturbance.

## COUNT V

### Race Discrimination and Retaliation in Violation of 42 U.S.C. § 1981

*(via 42 U.S.C. § 1983 — Against Defendants Andrews and Lisa, Individually)*

128. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

129. 42 U.S.C. § 1981 guarantees Plaintiff the same right to make and enforce contracts — including the contract of employment and any modification thereof — as is enjoyed by white citizens. Section 1981 also prohibits retaliation for asserting that right. See CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008).

130. Defendants Andrews and Lisa, acting under color of state law, intentionally interfered with Plaintiff's right to make and enforce his employment contract on the same basis as white employees. Specifically, Defendants Andrews and Lisa intentionally rescinded the Board-approved September 19, 2022 promotion; intentionally caused Plaintiff to be denied four (4) subsequent promotional opportunities in favor of white candidates; intentionally interfered with Plaintiff's contractually based salary-step placement and overtime opportunities; and retaliated against Plaintiff for asserting these contractual rights.

131. Section 1981 claims against state actors must be pleaded under 42 U.S.C. § 1983. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989). Plaintiff therefore pleads this claim under § 1983 against Defendants Andrews and Lisa in their individual capacities for the deprivation of his § 1981 rights.

132. The acts of Defendants Andrews and Lisa were intentional, willful, malicious, and/or in reckless or callous disregard of Plaintiff's federally protected rights. Plaintiff is entitled to compensatory and punitive damages against Defendants Andrews and Lisa in their individual capacities, together with attorneys' fees and costs under 42 U.S.C. § 1988.

## COUNT VI
### Violation of the Equal Protection Clause of the Fourteenth Amendment
*(42 U.S.C. § 1983 — Against Defendants Andrews and Lisa, Individually)*

133. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

134. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from intentionally treating a person differently than similarly situated persons on the basis of race or national origin without rational basis.

135. Defendants Andrews and Lisa, acting under color of state law, intentionally treated Plaintiff differently from similarly situated white employees, including comparators McCay, Huebsch, Stewart, Valvano, and Caggiano, on the basis of Plaintiff's race and national origin and without any rational basis for the disparate treatment.

136. The disparate treatment by Defendants Andrews and Lisa, including their refusal to comply with Civil Service Rule 12(c) and the express directive of the certified preferred

promotional list, was not the product of any neutral selection process. The departures from established procedures and the granular comparator-specific salary disparities described above constitute additional circumstantial evidence of intentional race-based decision-making.

137. Plaintiff is entitled to compensatory and punitive damages against Defendants Andrews and Lisa in their individual capacities under 42 U.S.C. § 1983, together with attorneys' fees and costs under 42 U.S.C. § 1988.

## COUNT VII

### Municipal Liability for Race and National-Origin Discrimination and Retaliation

*(42 U.S.C. § 1983; Monell — Against Defendant District)*

138. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

139. Under Monell v. Department of Social Services, 436 U.S. 658 (1978), the District is liable under § 1983 where the constitutional violation results from: (a) an official policy; (b) action by a final policymaker; (c) a custom or persistent practice; or (d) a failure to train or supervise amounting to deliberate indifference; or where the District has ratified the unlawful conduct.

140. Plaintiff alleges municipal liability under each of the following independent pathways:

### *(a) Final Policymaker*

141. On information and belief, Defendant Andrews exercises final, unreviewable authority within the District over personnel decisions, salary placement, promotional screening and recommendation, internal investigations, and Civil Service compliance — all of the decisions at issue in this Complaint. Defendant Andrews held himself out, on the record and in a recording, as the "arbiter of what is professional" within the District.

142. By virtue of his role and his exercise of unreviewable authority, Defendant Andrews' individual decisions — including the rescission of Plaintiff's promotion and the bypass of Plaintiff for subsequent appointments — constitute the official policy of the District for purposes of Monell. See Pembaur v. City of Cincinnati, 475 U.S. 469 (1986); St. Louis v. Praprotnik, 485 U.S. 112 (1988); Jeffes v. Barnes, 208 F.3d 49 (2d Cir. 2000).

### (b) Custom or Persistent Practice

143. On information and belief, the District has a custom or persistent practice of race, national-origin, and sex discrimination in custodial hiring and promotion, including: (i) the bypass of Plaintiff for five (5) Chief Custodian opportunities in three years; (ii) the bypass of Black Custodian John Abrams for promotion from part-time to full-time custodian for at least five years; (iii) the continuing denial of transfer rights to Mr. Abrams while granting them freely to younger, less-senior white employees; (iv) the categorical refusal to hire Hispanic applicants based on alleged English-language fluency; and (v) the categorical refusal to hire female applicants based on alleged inability to meet the "physical demands" of the job.

144. These practices are so persistent and widespread as to constitute the District's custom, even if no written policy formalizes them, and the District's policymaking officials had actual or constructive notice of them and acquiesced in them.

### (c) Ratification by the Board of Education

145. On information and belief, the Board of Education of the Copiague Union Free School District has ratified Defendant Andrews' personnel decisions by approving and adopting each of the four (4) subsequent Chief Custodian appointment resolutions presented by Defendant Andrews, with knowledge of Plaintiff's November 29, 2022 grievance, his December 8, 2022 grievance to Superintendent Bannon, and his November 27, 2025 EEOC Charge.

### (d) Failure to Train and Supervise

146. On information and belief, the District has failed to train and supervise Defendants Andrews and Lisa with respect to their obligations under Title VII, § 1981, § 1983, and the New York State Human Rights Law. The District has not investigated Plaintiff's formal grievances, has not investigated Plaintiff's EEOC Charge internally, and has taken no remedial action concerning Defendant Lisa's discriminatory statements and practices despite their persistence.

147. The District's failure to train and supervise amounts to deliberate indifference to the constitutional rights of Plaintiff and other minority employees. See City of Canton v. Harris, 489 U.S. 378 (1989); Connick v. Thompson, 563 U.S. 51 (2011).

148. As a direct and proximate result of the District's policies, customs, ratifications, and failures to train and supervise, Plaintiff suffered the constitutional violations described above. The District is therefore liable under § 1983 to the full extent of compensatory damages and equitable relief permitted by law (punitive damages excepted, City of Newport v. Fact Concerts, 453 U.S. 247 (1981)), together with attorneys' fees and costs under 42 U.S.C. § 1988.

## COUNT VIII

### Race and National-Origin Discrimination in Violation of the NYSHRL
*(N.Y. Exec. Law § 296(1) — Against All Defendants)*

149. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

150. The New York State Human Rights Law, N.Y. Exec. Law § 296(1)(a), prohibits employers from discriminating against employees on the basis of race or national origin in compensation or in terms, conditions, or privileges of employment. Following the 2019 amendments to the NYSHRL, the standard of proof requires the plaintiff to prove only that the unlawful conduct was "more than a petty slight or trivial inconvenience." N.Y. Exec. Law § 300; see Williams v. NYC Hous. Auth., 61 A.D.3d 62 (1st Dep't 2009).

151. Defendants discriminated against Plaintiff in violation of the NYSHRL through the conduct described above, including the rescission of his promotion; the bypass of four (4) subsequent appointments; the unequal salary placement; the transfer to the Middle School; the denial of overtime and resources; and the racially demeaning statements made by Defendants Andrews and Lisa.

152. The District is liable as Plaintiff's employer. Defendants Andrews and Lisa are liable in their individual capacities as supervisors who personally participated in the discriminatory conduct.

## COUNT IX

### Retaliation in Violation of the NYSHRL

*(N.Y. Exec. Law § 296(7) — Against All Defendants)*

153. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

154. Plaintiff engaged in protected activity by opposing what he in good faith believed to be unlawful discrimination (including by verbally complaining of "differential treatment" to Defendant Lisa, by emailing Defendant Andrews to the same effect, by filing three sequential grievances expressly alleging "differential treatment," and by filing the EEOC Charge). Defendants knew of Plaintiff's protected activity and subjected Plaintiff to materially adverse actions because of that protected activity, including the rescission of his promotion, the bypass for four (4) subsequent appointments, and the related adverse conduct described above.

155. The District is liable as Plaintiff's employer. Defendants Andrews and Lisa are liable in their individual capacities.

## COUNT X

### Hostile Work Environment in Violation of the NYSHRL

*(N.Y. Exec. Law § 296 — Against All Defendants)*

156. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

157. Defendants' conduct created a hostile work environment for Plaintiff on the basis of his race and national origin, in violation of the NYSHRL. Under the post-2019 NYSHRL standard, Plaintiff need only show that the unlawful conduct rose above the level of "petty slights or trivial inconveniences."

158. The conduct described above, including Defendant Lisa's racially demeaning statements and Defendant Andrews' "you people are aggressive" remark, far exceeds the threshold of a petty slight and altered the terms, conditions, and privileges of Plaintiff's employment.

## COUNT XI

### Aiding and Abetting in Violation of the NYSHRL

*(N.Y. Exec. Law § 296(6) — Against Defendants Andrews and Lisa)*

159. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

160. Section 296(6) of the NYSHRL imposes liability upon any person who "shall aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so."

161. Defendants Andrews and Lisa each personally participated in, aided, abetted, incited, compelled, and/or coerced the unlawful acts of discrimination and retaliation described above. Each is therefore independently liable under § 296(6).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court grant judgment in his favor against Defendants, jointly and severally, as follows:

A. An order declaring that Defendants' conduct violated Title VII of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981 and 1983; the Equal Protection Clause of the Fourteenth Amendment; and the New York State Human Rights Law, N.Y. Exec. Law § 296;

B. An order directing the District to retroactively promote Plaintiff to Chief Custodian effective September 19, 2022, with full back pay, salary-step placement, seniority, pension and benefit accruals, and all related rights and privileges;

C. Back pay, including lost wages, lost overtime, lost differential, lost benefits, and lost pension contributions, with prejudgment interest;

D. Front pay in such amount as is necessary to make Plaintiff whole;

E. Compensatory damages for emotional distress, humiliation, anxiety, sleep disturbance, and reputational injury, in an amount to be determined at trial;

F. Punitive damages against Defendants Andrews and Lisa in their individual capacities, in an amount sufficient to punish their conduct and deter future violations;

G.    A permanent injunction restraining Defendants from further discrimination, retaliation, or hostile-environment conduct against Plaintiff, and requiring the District to implement appropriate training, supervision, and complaint-investigation policies;

H.    Reasonable attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. §§ 1988 and 2000e-5(k), N.Y. Exec. Law § 297(10), and Federal Rule of Civil Procedure 54(d);

I.    Pre-judgment and post-judgment interest at the maximum rate permitted by law; and

J.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Mark W. Jenkins hereby demands a trial by jury on all issues so triable.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in dismissal of my case.

Dated: __MAY    11__, 2026
Wyandanch, New York

Respectfully submitted,

_____
**Mark W. Jenkins**
Plaintiff, Pro Se
86 Jamaica Avenue
Wyandanch, New York 11798
Telephone: (631) 805-3313
Email: markwjenkins9@gmail.com

## VERIFICATION

I, Mark W. Jenkins, the Plaintiff in the above-captioned action, have read the foregoing Verified Complaint and know the contents thereof. The same is true to my own knowledge, except as to those matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true. The grounds for my information and belief are conversations with witnesses, my personal review of the documents referenced in the Complaint, and my own personal experience as an employee of the Copiague Union Free School District.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: __MAY   11__, 2026

_____
**MARK W. JENKINS**